2025 IL App (2d) 250395-U
No. 2-25-0395
Order filed December 9, 2025

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT
_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Kane County. |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | No. 25-CF-1960 |
| WILLIE HUGHES, | ) ) ) | Honorable Salvatore LoPiccolo Julia A. Yetter, |
| Defendant-Appellant. | ) | Judges, Presiding. |

_____

JUSTICE BIRKETT delivered the judgment of the court.
Justices Hutchinson and Jorgensen concurred in the judgment.

**ORDER**

¶ 1    *Held*:  The State failed to present clear and convincing evidence that defendant's pretrial release posed a real and present threat to the community.

¶ 2    Defendant, Willie Hughes, appeals the order of pretrial detention of the circuit court of Kane County, arguing that the court erred in finding that the State presented clear and convincing evidence that his pretrial release posed a real and present threat to the public. We reverse and remand with directions to order defendant's release with appropriate conditions.

¶ 3                                    I. BACKGROUND

¶ 4    On August 20, 2025, the State charged defendant with possession and possession with intent to deliver less than 15 grams of cocaine. 720 ILCS 570/401(c)(2), 402(c) (West 2024). That same day, the State filed its verified petition to deny defendant pretrial release, relevantly arguing that he was charged with a detainable offense and that his pretrial release posed a real and present threat to the safety of the community.

¶ 5    At the hearing, the court admitted a synopsis describing how, on August 19, 2025, police executed a search warrant at a residence occupied by defendant, Crystal Martin, and Carl Armstrong, Jr. When police entered the residence, defendant and Martin were in an upstairs bedroom, where police recovered "a clear plastic bag containing 11.03 grams, with packaging, of crack cocaine," two cell phones, a notebook ledger, and several ripped bags containing cocaine residue. The contents of the ledger were not described. Defendant had $417 in cash on his person. In a later police interview, Martin admitted sharing the room with defendant but denied using or seeing any crack cocaine there.

¶ 6    Armstrong, Jr. was seated on a couch in a downstairs living room during the search. In the kitchen, which was also located downstairs, police found multiple ripped bags containing cocaine residue, and a measuring cup with "[i]nositol pow[d]er with cocaine residue." At a later interview, Armstrong, Jr. told police that he owned the home and "received cocaine" from defendant, who rents his upstairs bedroom. Armstrong, Jr. denied knowing "about the firearms." The synopsis makes no other reference to any firearms or other weapons that may have been found in the home.

¶ 7    In arguing dangerousness, the State first discussed defendant's criminal history, noting a 1995 conviction for resisting a peace officer and a 2010 conviction for aggravated unlawful use of a weapon. The State also noted that, at the time of his latest arrest, defendant was on probation for a 2022 conviction for possession with intent to deliver. The State contended that narcotic sales posed a "generalized threat to the people of the community," citing the "knives and the gun that

were recovered" at the residence, while acknowledging that no weapons were actually recovered in "defendant's presence."

¶ 8     Defendant, on the other hand, argued that his criminal history—which was mostly comprised of convictions from decades prior—did not demonstrate that his release would pose a real and present threat. Further, defendant's probation from the 2022 conviction "was set to expire at the beginning of October," and he had otherwise complied with the terms of his probation for two years prior to his arrest. Last, defendant emphasized that he had not been "charged with any weapons charges as it relates to the weapons that were [presumably found at the residence]."

¶ 9     The court granted the State's petition. In determining that his pretrial release would pose a real and present threat to the community, the court acknowledged that it could not detain defendant solely as a result of the "general threat that's posed to the community by people who sell drugs." Instead, it found that defendant's "repeated violations of the State of Illinois laws in regards [*sic*] to the selling of controlled substances" and his current probation status established his dangerousness.

¶ 10     On September 3, 2025, defendant filed his motion for relief, generally disputing that the State presented any clear and convincing evidence that: (1) there was a great presumption that defendant committed the charged offenses; (2) defendant's pretrial release would pose a real and present threat to the community; and (3) no conditions could mitigate such a threat. On September 4, 2025, the court denied defendant's motion. Defendant timely appeals.

¶ 11                                   II. ANALYSIS

¶ 12     On appeal, defendant argues that the trial court erred in finding that the State presented clear and convincing evidence that his pretrial release would pose a real and present threat to the community. Specifically, he argues that the court improperly relied on his criminal history to characterize him as dangerous because, even assuming he would sell cocaine again, the inherent

dangers of selling cocaine cannot, on their own, justify pretrial detention. Defendant also argues that the term "dangerous," as used in the Code of Criminal Procedure (Code) (725 ILCS 5/art. 110 (West 2024)), refers only to the threat of physical violence, and because no physical violence was implicated here, the court erred in finding his release posed a real and present threat to the public. Because we agree that the record and relevant factors did not provide a proper basis for the court's dangerousness finding, we need not address defendant's latter argument.

¶ 13   The Code provides that pretrial release may be denied only in certain situations. 725 ILCS 5/110-2(a), 110-6.1 (West 2024). In filing a petition to deny a defendant pretrial release, the State bears the burden of proving, by clear and convincing evidence, that: (1) the proof is evident or the presumption great that the defendant has committed a qualifying offense; (2) the defendant's pretrial release poses a real and present threat to any person or the community based on the specific facts of the case; and (3) no conditions could mitigate such a threat. *Id.* § 110-6.1(a), (e), (f) (West 2024).

¶ 14   Where a circuit court rules on a pretrial detention petition following a hearing where no live witnesses testified, we review the court's findings *de novo*. *People v. Morgan*, 2025 IL 130626, ¶ 21. Here, no live witnesses testified at defendant's pretrial detention hearing, and we therefore review the circuit court's findings *de novo*. *Id.*

¶ 15   We agree with defendant that the record did not support the trial court's finding that his pretrial release would pose a real and present threat to the public. The Act includes a non-exhaustive list of factors to be used in determining whether a defendant's pretrial release poses a real and present threat, based upon "the specific articulable facts of the case." 725 ILCS 5/110-6.1(g). These factors are:

> "(1) The nature and circumstances of any offense charged, including whether the offense is a crime of violence, involving a weapon, or a sex offense.

(2) The history and characteristics of the defendant including:

(A) Any evidence of the defendant's prior criminal history indicative of violent, abusive or assaultive behavior, or lack of such behavior. Such evidence may include testimony or documents received in juvenile proceedings, criminal, quasi-criminal, civil commitment, domestic relations, or other proceedings.

(B) Any evidence of the defendant's psychological, psychiatric or other similar social history which tends to indicate a violent, abusive, or assaultive nature, or lack of any such history.

(3) The identity of any person or persons to whose safety the defendant is believed to pose a threat, and the nature of the threat.

(4) Any statements made by, or attributed to the defendant, together with the circumstances surrounding them.

(5) The age and physical condition of the defendant.

(6) The age and physical condition of any victim or complaining witness.

(7) Whether the defendant is known to possess or have access to any weapon or weapons.

(8) Whether, at the time of the current offense or any other offense or arrest, the defendant was on probation, parole, aftercare release, mandatory supervised release or other release from custody pending trial, sentencing, appeal or completion of sentence for an offense under federal or state law.

(9) Any other factors, including those listed in Section 110-5 of this Article deemed by the court to have a reasonable bearing upon the defendant's propensity or reputation for violent, abusive, or assaultive behavior, or lack of such behavior." *Id.*

¶ 16    Turning first to the nature and circumstances of the offense, the record shows that police found just over 11 grams of cocaine in a bedroom defendant shared with Martin—a weight that the court found, in isolation, to be potentially indicative of personal use. Police also located ripped baggies containing cocaine residue throughout the home and defendant's bedroom. Nothing in the record suggests that defendant ever delivered narcotics to anyone aside from Armstrong, Jr.; the contents of the ledger found in defendant's bedroom were not described to contain any information concerning any narcotics sales. There was no evidence that the instant offenses involved any violence. Taken together, these facts suggest that defendant was a user involved in the limited, nonviolent distribution of cocaine to a single verified customer. Accordingly, the seemingly small scale of defendant's operation—if it can accurately be called that—weighs against a finding that defendant's pretrial release would endanger the community. 725 ILCS 5/110-6.1(g)(1).

¶ 17    Turning to the second factor, the record reveals that defendant's criminal history consists of the following: (1) a 1995 conviction for unlawful possession of a controlled substance; (2) a 1995 conviction for resisting a peace officer; (3) a 1999 conviction for unlawful possession of a controlled substance; (4) a 2001 conviction for unlawful possession of a controlled substance; (5) a 2001 conviction for unlawful possession of a controlled substance with intent to deliver; (6) a 2010 conviction for aggravated unlawful use of a weapon; and (7) a 2022 conviction for unlawful possession of a controlled substance with the intent to deliver.

¶ 18    Defendant's criminal history is certainly extensive, but aside from his convictions for resisting a police officer and aggravated use of a weapon, it is largely comprised of nonviolent drug offenses. The potentially violent offenses, however, occurred 15 and 30 years ago, respectively, and the State did not present any facts concerning those offenses suggesting any ongoing risk. Thus, while defendant's record may indicate some level of risk, it is somewhat undermined both by the nature and age of his offenses, as the Act required the State to show clear

and convincing evidence that defendant's release posed a real *and present* threat. *Id.* § 110-6.1(e)(3).

¶ 19    Because the State never argued that defendant posed a threat to any specific individuals, the third factor—dealing with the identity of any vulnerable persons—is inapplicable. Similarly, the fourth factor, which deals with any statements made by or attributed to defendant, is also inapplicable, as defendant seemingly did not converse with police at the time of his arrest.

¶ 20    Concerning the fifth factor—defendant's personal characteristics—the record indicates that he is 61 years old and experiencing a number of chronic health problems. Defendant proffered that he receives disability income due to his medical conditions, which include diabetes, stenosis, arthritis, and high blood pressure. His proffer was corroborated by the synopsis, which described how officers found multiple prescription bottles prescribed to defendant in his bedroom. This factor cuts against any finding that defendant's pretrial release poses a threat to the community.

¶ 21    Because no individual victims were identified by the State, the sixth factor—dealing with the age and condition of any victims—is inapplicable.

¶ 22    Concerning the seventh factor, no evidence establishes that defendant had access to any weapons. While the synopsis referenced certain "firearms" located in the residence, it contains no suggestions whatsoever that these weapons belonged to defendant or were located in his shared bedroom of the residence.

¶ 23    Finally, concerning the eighth factor, the record reflects defendant was on probation for possession of a controlled substance with the intent to deliver, the same offense for which he now stands charged. The fact that his probation might have otherwise terminated in October, a few months after this arrest, is not a factor in his favor as this new charge would now support a petition to revoke defendant's probation.

¶ 24    Applied to the record, these factors do not support the trial court's finding that defendant's pretrial release posed a real and present threat to the community. In finding otherwise, the court focused solely on aggravating factors—such as the inherent dangers of the offense, the length of defendant's criminal history, and his probation status—while largely overlooking any mitigating considerations—such as the small scale of his offenses, the largely nonviolent nature of his record, and his documented health issues. Viewed in context, these mitigating factors portray defendant more as an individual struggling with substance abuse rather than a real and present danger to the community. For all of these reasons, the trial court erred in finding that defendant's pretrial release posed a real and present risk to the public.

¶ 25                                      III. CONCLUSION

¶ 26    For these reasons, we reverse the judgment of the circuit court of Kane County and remand with direction to order defendant's release with appropriate conditions.

¶ 27    Reversed and remanded with directions.